UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

COLE HICKMAN, Individually and on behalf of
all others similarly situated,

         Plaintiff,       **<u>OPINION & ORDER</u>**

    v.            25-cv-4110 (FB) (LKE)

FLYWIRE CORPORATION, MICHAEL
MASSARO, COSMIN PITIGOI, MICHAEL
ELLIS, and ROB ORGEL,

         Defendants.

---------------------------------------------------------------X

**LARA K. ESHKENAZI, United States Magistrate Judge:**

Plaintiffs Cole Hickman and Jason Haas, individually and on behalf of all others similarly situated, bring this action against Defendants Flywire Corporation ("Flywire"), Michael Massaro, Cosmin Pitigoi, Michael Ellis, and Rob Orgel for alleged violations of the Securities Exchange Act of 1934 ("Exchange Act"). (*See generally* Compl., Dkt. No. 1.) Before the Court are the motions of both Hickman and Haas to be named Lead Plaintiffs and for approval of their chosen counsel to be appointed as Lead Counsel pursuant to the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). (Haas Mot. To Appoint Lead Counsel and Lead Pl., ECF 17 ("Haas Mot."); Hickman Mot. To Appoint Lead Counsel and Lead Pl., ECF 18 ("Hickman Mot.").) Hickman and Haas have filed a Joint Stipulation for Appointment as Co-Lead Plaintiffs and Approval of Selection of Co-Lead Counsel. (Dkt. No. 19. ("Joint Mot.").)

For the reasons stated below, the motions are granted; Hickman and Haas are appointed as Co-Lead Plaintiffs, and Pomerantz LLP ("Pomerantz") and The Rosen Law Firm, P.A. ("Rosen Law"), are appointed as Co-Lead Counsel.

## I.     BACKGROUND

### A.     Factual Allegations

Flywire is a payments-enablement and software company operating in a variety of industries across various verticals (i.e., "markets encompassing a group of companies and customers that are all interconnected around a specific niche"). (Compl. 2.) Flywire's software allows payments, including tuition payments, to be sent securely internationally. *The Trusted Choice: Real Students. Real Results.*, Flywire, https://perma.cc/W9GG-EG8K. Education is among Flywire's main business verticals. (Compl. 2.) Flywire's education-payment facilitation business is dependent on international student enrollment and school preferences. (*Id.*)

Flywire's business was adversely impacted by the increase in restrictions on international student visas by the Australian and Canadian governments. (*Id.* at 2-3.) Specifically, in late 2023, the Australian government placed additional restrictions on international student visas. (*Id.*) Shortly thereafter, the Canadian government followed suit by unveiling international student visa intake caps. (*Id.* at 2.) Such limits negatively impacted the ability of international students to access schools in both countries and, as a result, posed a risk to Flywire's education business. (*Id.* at 4.) Despite the "headwinds" Flywire faced, it maintained predictions of strong positive growth. (*Id.*)

### B.     Procedural History

On July 25, 2025, Plaintiff Cole Hickman filed his complaint against Flywire, alleging that Flywire made materially false and misleading statements regarding its business, operations,

and prospects. (*Id.* at 3.) On September 23, 2025, both Plaintiff Cole Hickman and Plaintiff Jason Haas filed Motions to Appoint Lead Counsel and Lead Plaintiff. (Haas Mot.; Hickman Mot.) The applicants for Lead Plaintiff then filed a stipulation asking this Court to name Hickman and Haas as Co-Lead Plaintiffs and appoint their chosen counsel as Lead Counsel. (Joint Mot.)

## II.    DISCUSSION

### A.    Legal Standard

The determination of whether an applicant is a suitable lead plaintiff under the PSLRA involves a two-step analysis. First, the PSLRA establishes a rebuttable presumption that the most adequate plaintiff is:

> the person or group of persons that: (1) has either filed the complaint or made a [timely] motion to be appointed as lead plaintiff(s); (2) in the determination of the court, has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Chitturi v. Kingold Jewelry, Inc.*, No. 20-cv-2886, 2020 WL 8225336, at *4 (E.D.N.Y. Dec. 22, 2020) (internal citations omitted). For potential lead plaintiffs who did not file the complaint in the action, the PSLRA provides a statutory 60-day period to file a timely motion to be named the lead plaintiff after the date on which notice is published. 15 U.S.C. §77z-1(a)(3)(A)(i)(II); *Murphy v. Argo Blockchain plc*, 683 F. Supp. 3d 211, 216 (E.D.N.Y. 2023) (noting that intended lead plaintiffs must file motions to serve as lead plaintiff "not later than 60 days after the date on which the notice is published").

The relevant factors for the Court to consider in determining whether a potential lead plaintiff has the largest financial interest in the class include: (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (i.e., the difference between the number of shares purchased and the number of shares sold during the

3

class period); (3) the net funds expended during the class period (i.e., the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered. *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 112 (E.D.N.Y 2012) (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)) (the "*Olsten* factors").

Generally, class certification under Fed. R. Civ. P. 23 requires that a potential class establish the factors of numerosity, commonality, typicality, and adequacy. *See Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70, 80 (2d Cir. 2015). For a motion to appoint a lead plaintiff under the PSLRA, however, a proposed plaintiff need only make a preliminary showing that Rule 23's typicality and adequacy factors are met. *Hunter v. Blue Ridge Bankshares, Inc.*, 346 F.R.D. 16, 24 (E.D.N.Y 2024). Claims or defenses presented by the lead plaintiff must be typical to the claims or defenses of the class. F.R.C.P. 23(a)(3). This is satisfied where "the claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability." *Murphy*, 683 F. Supp. 3d at 222. A lead plaintiff's claims "need not be identical to the claims of the class to satisfy the typicality requirement." *City of Ann Arbor Employees' Ret. Sys. V. Citigroup Mortg. Loan Tr. Inc.*, No. 08-cv-1418, 2009 WL 10709107, at *3 (E.D.N.Y. Mar. 9, 2009). Rather, a lead plaintiff is considered "typical" when their "claims are based on the same alleged false or misleading statements and omissions attributed to [d]efendants during the same period as the other potential class members' claims." *Lemm v. New York Community Bancorp, Inc.*, 733 F. Supp. 3d 107, 115 (E.D.N.Y. 2024). Adequacy under Rule 23 requires that the representative parties will fairly and adequately protect the interests of the class. F.R.C.P. 23(a)(4). To satisfy the adequacy requirements of Rule 23:

> (1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the

4

litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation. Additionally, the lead plaintiff should have a sufficient interest in the outcome to ensure vigorous advocacy.

*Kehoe v. 3D Sys. Corp.*, No. 21-cv-1920, 2021 WL 5408923, at *5 (E.D.N.Y. July 13, 2021).

In the second step of analysis under the PSLRA, "[o]nce the court is satisfied that it has found the presumptive lead plaintiff, the court may then consider whether that presumption has been 'rebutted' by a member of the purported plaintiff class." *Hunter*, 346 F.R.D. at 23 (*citing Lemm*, 733 F.Supp.3d at 114). This may only be done upon proof that the presumptively adequate plaintiff either will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff inadequate to sufficiently represent the class. *Chitturi,* 2020 WL 8225336, at *4.

Courts have approved stipulations such as the one filed by Plaintiffs Hickman and Haas, in which formerly competing "independent lead plaintiff movants [] join together to help ensure that adequate resources and experience are available to the prospective class in the prosecution of th[e] action." *In re Rockwell Med., Inc. Sec. Litig.*, No. 16-cv-01691 (RJS), Dkt. No. 18 at 2-3 (S.D.N.Y. May 20, 2016) (internal citation omitted). If a court finds that "'litigation is stalled, expenses become unnecessarily duplicative or wasteful, or the structure becomes otherwise unmanageable,' the Court may modify this co-lead plaintiff structure." *Lavin v. Virgin Galactic Holdings, Inc.*, 21-cv-3070 (ARR), 2021 WL 5409798, at *5 (E.D.N.Y. Sept. 17, 2021) (quoting *Dolan v. Axis Cap. Holdings Ltd.*, No. 04-cv-8564 (RJH), 2005 WL 883008, at *6 (S.D.N.Y. Apr. 13, 2005)).

After the lead plaintiff is selected, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. §78u-4(a)(3)(B)(v). "There is a strong resumption in favor of approving a properly-selected lead

5

plaintiff's decisions as to counsel selection." *Hunter*, 346 F.R.D. at 26 (citing *Salinger v. Sarepta Therapeutics, Inc.*, No. 19-cv-8122, 2019 WL 6873807, at *5 (S.D.N.Y. Dec. 17, 2019)). The experience of a firm has a heavy influence on lead counsel selection. *See Hunter*, 346 F.R.D. at 25 (naming lead plaintiff's selection of counsel as lead counsel where firm was experienced in securities litigation); *see also Lemm*, 733 F. Supp. 3d at 116 (same).

### B.   Analysis

As a threshold matter, both applicants for lead plaintiff filed their applications for lead plaintiff status prior to 15 U.S.C. §77z-1(a)(3)(A)(i)(II)'s 60-day deadline. Under the PSLRA, hopeful lead plaintiffs must file their applications within 60 days of the publication of notice that the action has been initiated. 15 U.S.C. §77z-1(a)(3)(A)(i)(II). Here, notice under the PSLRA was effectuated on July 25, 2025, when Hickman's counsel issued a press release concerning the action. (Hickman Mot. Ex. B.) As such, any lead plaintiff applications were due on or before September 23, 2025. Both Hickman and Haas filed their applications on September 23, 2025. (*See* Hickman Mot.; s*ee also* Haas Mot.)

The Court now turns to the financial interest of the applicants. In light of the joint application, the Court will consider the combined financial interest of Hickman and Haas. The co-applicants allege that together they hold the largest financial interest in the relief sought by the class. (Joint Mot. at 2.) To determine whether an applicant or group of applicants hold the largest financial interest, the Court applies the *Olsten* factors. *Olsten*, 3 F. Supp. 2d at 295. Turning first to the total number of shares purchased during the class period, applicants Haas and Hickman purchased a combined 312 shares between February 28, 2024, and February 25, 2025 (the "Class Period"). (*See* Hickman Mot. Loss Chart, ECF No. 18-4 (showing a purchase of 12 shares on 2/24/2025); *see also* Haas Loss Chart, ECF No. 17-4 (showing a purchase of 300

6

shares on 7/9/2024).) Neither applicant sold any shares during the class period; Haas sold all 300 of his shares in March of 2025, while Hickman had not sold any of his 12 shares by September 23, 2025. (Hickman Mot. Loss Chart, ECF No. 18-4; Haas Loss Chart, ECF No. 17-4.) As such, under the second *Olsten* factor, the net shares purchased by the co-lead plaintiff applicants (i.e., the difference between the number of shares purchased and the number of shares sold during the class period) is zero. *See In re Gentiva*, 281 F.R.D. at 112 (citing *Olsten*, 3 F. Supp. 2d at 295).

To assess the third *Olsten* factor, the net funds expended by the lead plaintiff during the class period, the Court considers the difference between the amount spent to purchase the plaintiff's shares and the amount received for the sale of any shares during the class period. *See In re Gentiva*, 281 F.R.D. at 112. During the class period, Hickman and Haas expended a total of $1,737.47. (*See* Hickman Mot. Ex. 4 (showing that Hickman sold zero shares during the class period); *see also* Haas Mot. Ex. 4 (showing that Haas purchased 300 shares for $16.56 per share for a total of $4,966.50 and sold all 300 shares for $10.26 per share for a total of $3,229.03, creating a loss of $1,737.47).) Under the fourth *Olsten* factor, the Court reviews the approximate losses suffered. *See In re Gentiva*, 281 F.R.D. at 112. In total, the Co-Lead Plaintiff applicants allege $1,827.47 in losses suffered; Hickman alleges a loss of $90, while Haas alleges a loss of $1,737.47. (Hickman Mot. Ex. 4; Haas Mot. Ex.4.) Finally, no other class member has moved to be appointed Lead Plaintiff; as such, the Court is not aware of any competing applicants with deeper financial interests than the combined interest of the co-movants.

Courts have endorsed stipulations among competing lead plaintiff movants, and have permitted "independent lead plaintiff movants [to] join together to help ensure that adequate resources and experience are available to the prospective class in the prosecution of th[e] action because [e]mploying a co-lead plaintiff structure ... will also provide the proposed class with the

substantial benefits of joint decision-making." *In re Rockwell Med.*, No. 1:16-cv-01691-RJS, Dkt. No. 18 at 2-3. The fact that Haas's loss is significantly more than Hickman's is not necessarily an impediment to approving their joint stipulation. *See Deputy v. Akebia Therapeutics*, *Inc. Et al.*, No. 1:22-cv-1411-AMD-VMS, June 28, 2022 Text Order (E.D.N.Y. Sept. 8, 2022) (appointing co-lead plaintiffs with approximately $500,000.00 difference in losses); *see also Pizzuto v. Homology Meds., Inc.*, No. 2:22-cv-1968-FLA-JPR, Dkt. No. 38 (C.D. Cal.) (appointing three co-lead plaintiffs with losses ranging from over $892,000.00 to approximately $192,000.00). As the co-applicants have stipulated to moving forward together as Co-Lead Plaintiffs, they are presumably aware of the differences in losses. Given the consent of the co-movants and the Court's discretion in the lead plaintiff appointment process, the Court finds that the appointment of Haas and Hickman as Co-Lead Plaintiffs is appropriate.

The Court now considers whether the Co-Lead Plaintiffs have established that they meet Rule 23's typicality and adequacy requirements. Based on the parties' submissions and the relevant law, the Court finds that they have. Typicality requires that a lead plaintiff's "claims are based on the same alleged false or misleading statements and omissions attributed to [d]efendants during the same period as the other potential class members' claims." *Lemm*, 733 F. Supp. 3d at 115. Here, both applicants, along with the remainder of the class, allege that they suffered losses stemming from Defendants' violations of the Securities Exchange Act "by making what they knew or should have known were false or misleading statements of material facts concerning Flywire, or by omitting to state material facts necessary to make the statements they did make not misleading." (Hickman Mot. Ex. 2 at 9; *see also* Haas Mot. Ex. 2 at 5-6 ("Movant, like all members of the Class, alleges that Defendants violated the Exchange Act by issuing false and misleading statements about the Company's business.")) Because both the

8

claims of Hickman and Haas are based on "the same alleged false or misleading statements and omissions attributed to [d]efendants during the same period as the other potential class members' claims," *Lemm*, 733 F. Supp. 3d at 115, the movants' claims are typical of the Class as required by Rule 23.

The co-applicants' claims are also adequate. Rule 23's adequacy provision requires that:

> (1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation. Additionally, the lead plaintiff should have a sufficient interest in the outcome to ensure vigorous advocacy.

*Kehoe*, No. 21-cv-1920, 2021 WL 5408923, at *5 (E.D.N.Y. July 13, 2021). First, there is no apparent conflict between the interests of the Class and the interests of the co-movants as expressed in the filings, and there is no evidence of collusion. *See* Hickman Mot. Ex. 2 at 10 ("There is no evidence of antagonism or conflict between Hickman's interests and those of the Class"); *see also* Haas Mot. Ex. 1 at 6 ("Movant is not aware that any conflict exists between Movant's claims and those asserted on behalf of the Class.") Second, the counsel chosen by the Haas and Hickman appear to be experienced and have worked together previously on similar matters. *See* Joint Mot. at 4 ("Whereas, Rosen Law and Pomerantz have successfully prosecuted similar securities class actions under the PSLRA as Co-Lead Counsel.") Finally, both movants have an interest in advancing the outcomes of this litigation. *See id.* at 2 ("Haas and Hickman, each having alleged losses in connection with the fraud alleged in the [Complaint], both have financial interests in the outcome of this litigation.") As such, this Court finds that the co-movants are adequate and thus meet Rule 23's requirements.

The presumption that the co-movants should be appointed co-lead plaintiffs "may be rebutted only upon proof" that they "will not fairly and adequately protect the interests of the

class" or are "subject to unique defenses that render [either] incapable of adequately representing the class." *Lemm*, 733 F.Supp.3d at 116 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). "Conclusory assertions and mere speculation will not suffice." *Id.* (citing *Murphy v. JBS S.A.*, 17-cv-3084, 2017 WL 4480751, at *5 (E.D.N.Y. Oct. 6, 2017)). Here, no rebuttal has been offered, nor has any proof been shown to demonstrate that the co-movants will not fairly or adequately represent the class. Nor is there any indication that there are any unique defenses that Defendants could raise that would render the co-movants unable to adequately represent the class. Hass and Hickman therefore satisfy the two-step inquiry and shall be designated as Co-Lead Plaintiffs.

## III.    CONCLUSION

For the stated reasons, the joint motion to appoint Hickman and Haas as Co-Lead Plaintiffs and to approve the election of Rosen and Pomerantz as Co-Lead Counsel for the Class is granted.

**SO ORDERED.**

Dated: Brooklyn, New York
          November 3, 2025

*Lara K. Eshkenazi*
LARA K. ESHKENAZI
United States Magistrate Judge

10