**Katten**

**50 Rockefeller Plaza**
**New York, NY  10020-1605**
**+1.212.940.8800 tel**
**katten.com**

February 6, 2026

**JONATHAN ROTENBERG**
jonathan.rotenberg@katten.com
+1.212.940.6405 direct

**VIA ECF**

The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:**     *Cole Hickman v. Flywire Corporation et al.*, **No. 25-cv-04110**

Dear Judge Block,

We represent Defendants Flywire Corporation ("Flywire"), Michael Massaro, Rob Orgel and Cosmin Pitigoi (collectively, "Defendants") in the above-captioned putative class action, which alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.  We write pursuant to Rule 2(A) of this Court's Individual Rules of Practice to respectfully request a pre-motion conference regarding Defendants' anticipated motion to dismiss Plaintiffs' Amended Complaint (the "AC," Dkt. 25).  As summarized below, the AC should be dismissed because, among other reasons, it fails to allege an actionable misstatement or omission, or scienter, with particularity, as required under the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]

## I.    Background

Flywire is a Boston-based FinTech company that operates an international payment platform facilitating cross-border payments, including, as relevant here, tuition payments for educational institutions.  (¶ 2.)[2]  Plaintiffs allege that, during 2024, Defendants made statements which downplayed the impact that newly implemented student visa caps in Canada and Australia would have on its education business, and that the "truth" was purportedly revealed when, in February 2025, Flywire announced that it expected revenues from those countries would be down by about 30% during 2025.  (*See* ¶ 73.)[3]  Plaintiffs' claims fail for multiple independent reasons.

## II.    Plaintiffs' Theory is Impermissible Fraud by Hindsight.

At its core, the AC's theory of liability is textbook "fraud by hindsight," which "is not actionable in this Circuit."  *Bay Harbour Mgmt. LLC v. Carother*s, 282 F. App'x 71, 75 (2d Cir. 2008).  The PSLRA requires that a securities complaint specify the "reasons why the alleged misstatement is misleading."  15 U.S.C § 78u-4(b)(1)(B).  The PSLRA further requires that the complaint plead, with particularity, facts giving rise to a "strong inference" of scienter, 15 U.S.C. § 78u-4(b)(2)(A), *i.e.*, actual knowledge of falsity with respect to forward-looking statements, 15

---

[1] Defendants reserve the right to raise additional grounds in their anticipated motion to dismiss.

[2] References to "¶ __" are to paragraphs of the AC.  On a motion to dismiss, the Court may consider, in addition to the paragraphs of the AC, documents incorporated therein by reference as well as documents subject to judicial notice. *ATSI Communications, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007).

[3] Specifically, Plaintiffs challenge statements from (i) May and June 2024 that an initial December 2023 student visa cap regulation in Australia was not materially affecting Flywire's business (¶¶ 81, 83); (ii) November 2024 that Flywire was seeing "early moderation" in revenue growth in Australia (¶ 87); and (iii) November and December 2024 conveying Flywire's expectations that (a) 2025 revenue from Canada would be "flat" compared to 2024 (¶¶ 87, 93, 95), and (b) Flywire would continue to be a "Rule of 40" company in 2025 (¶¶ 85, 89).

# Katten

Hon. Frederic Block
February 6, 2026
Page 2

U.S.C. § 78u-5(c), and "conscious misbehavior or recklessness" for others. *Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. FXCM, Inc.*, 767 F. App'x 139, 141 (2d Cir. 2019). Such an inference must be "cogent and at least as compelling as any opposing inference of non-fraudulent intent." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007).

The AC fails on both grounds. It relies entirely on Flywire's February 2025 guidance as the basis for why Defendants' earlier statements concerning Flywire's 2024 revenues and initial expectations for 2025 were false or misleading and why Defendants must have known as much. Such a claim is fundamentally defective under the PSLRA and must be dismissed.

Desperate to avoid this outcome, Plaintiffs contrive a patently false theory. They claim, based on a single, low-level and anonymous "Relationship Manager," who spent less than one year at Flywire, that Flywire could predict its spring 2025 revenues by October 2024 based on fall 2024 enrollment numbers alone. (¶¶ 29, 38-39, 88, 90, 92, 94, 96.) But this is wildly speculative, relies on countless unfounded assumptions, says nothing about the second half of 2025, and ignores innumerable other factors that Flywire would need to account for when projecting its 2025 revenue.[4] Plaintiffs' theory does not remotely comply with the applicable pleading standards. *See In re Skechers USA, Inc. Sec. Litig.*, 444 F. Supp. 3d 498, 517 (S.D.N.Y. 2020).

Significantly, Plaintiffs' theory completely ignores the new and different government policies that were implemented in Canada and Australia in late 2024 and early 2025 and that, in February 2025, Flywire disclosed as the reasons for its downward guidance. Among other things, the Canadian government issued far more restrictive visa caps for 2025 and abruptly terminated a program requiring most students to pay full annual tuition upfront as part of the visa application process. (Flywire 2025 10-K at 39.) The AC also omits that Flywire's 2025 outlook in Australia worsened because, in December 2024, after all the alleged statements were made, the government revised its visa cap regulations to no longer favor Flywire's higher-tier educational institution clients. (*Id.*) Plaintiffs' silence on these regulations and Flywire's related disclosures doom their case. *See Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 41 (S.D.N.Y. 2016) (dismissing where plaintiff "ignore[s] the explanation … as to the basis for the revision").

## III.    Plaintiffs Otherwise Fail to Plead an Actionable Misstatement under the PSLRA.

Plaintiffs fail to plead an actionable misstatement for many other reasons. For example, the Canada-related statements are all forward-looking and protected by the PSLRA's safe harbor because they were accompanied by warnings that caps on student visas were, and would continue to, impact Flywire's performance in Canada – the precise risk that Plaintiffs allege caused their losses. *See In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 253 (S.D.N.Y. 2020); (10-Q for 3Q 2024 at 34-35). Defendants' statements also bespoke caution.

---

[4] The theory also undermines Plaintiffs' claims. If Defendants could predict spring 2025 enrollment based on a roughly 1 to 1 ratio with fall 2024 enrollment, it would support, rather than undermine, Defendants stated expectation that Flywire 2025 education revenues in Canada would be "roughly flat" year over year. (¶¶ 87, 93, 95); *see In re Pretium Res. Inc. Sec. Litig.*, 256 F. Supp. 3d 459, 478 (S.D.N.Y. 2017) (falsity "theory is implausible").

# Katten

Hon. Frederic Block
February 6, 2026
Page 3

Further, absent from the AC are any allegations describing the December 2023 Australian regulations or their impact on Flywire's business, let alone showing that Defendants ever inaccurately mischaracterized Flywire's Australian revenue or even spoke to their future expectations in Australia before issuing the February 2025 guidance. *See BlackBerry Ltd.*, 93 F. Supp. 3d 233, 245 (S.D.N.Y. 2015) (dismissing where plaintiff failed to plead "recognizable trend" of lowered demand when statements were made), *aff'd*, 660 F. App'x 23 (2d Cir. 2016). To the contrary, the documents Plaintiffs rely upon establish that Flywire posted strong growth in Australia during the first half of 2024 despite the December 2023 regulation. (*See* Q1 2024 Earnings Tr. at 18; Q2 2024 Earnings Tr. at 7.) Accordingly, the AC fails to plead falsity.

## IV. Plaintiffs Otherwise Fail to Plead a Strong Inference of Scienter under the PSLRA.

Plaintiffs also fail to plead any inference of scienter, let alone, as they must, one that is "strong," *i.e.*, "cogent and at least as compelling as any opposing non-fraudulent inference." *Tellabs*, 551 U.S. at 314. As discussed above, Plaintiffs' primary theory of scienter does not come close to showing Defendants' actual knowledge of falsity for forward-looking statements or recklessness for other statements. The AC's other scienter allegations do not help. Plaintiffs cannot infer fraud from Defendants' leadership positions at Flywire. (*See* ¶¶ 100-07); *Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010). Nor can they rely on the disfavored core operations doctrine, which, even if it remains viable, would not apply because education revenue from Canada and Australia did not "constitute nearly all of [the] company's business." *In re Cronos Grp. Inc. Sec. Litig.*, 2023 WL 8003324, at *7 (E.D.N.Y. Nov. 11, 2023); (*see* ¶ 26). Lastly, Plaintiffs' remaining confidential witness allegations simply convey the oft-disclosed fact that Canadian visa caps created headwinds for Flywire during 2024. (*See* ¶¶ 33-42). This in no way suggests that Defendants knew that the same headwinds would cause Flywire's Canadian education revenue in 2025 to be even worse. *See In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *14 (S.D.N.Y. Apr. 2, 2020).

A far more compelling and non-fraudulent inference here is that Defendants were encouraged by Flywire's ability to grow during 2024 despite the earlier student visa caps, initially believed that the situations in Canada and Australia had largely stabilized, and later adjusted their expectations for 2025 when the countries instituted new and problematic policies. This inference is bolstered by Plaintiffs' failure to allege any insider stock sales, which rebuts an inference of scienter. *See In re Piedmont Lithium Inc. Sec. Litig.*, 712 F. Supp. 3d 301, 314 (E.D.N.Y. 2024).

## IV. Conclusion

The AC is subject to dismissal. Accordingly, Defendants respectfully request that the Court schedule a pre-motion conference to discuss their anticipated motion to dismiss.[5]

---

[5] Plaintiffs also fail to plead loss causation because the alleged corrective disclosure, *i.e.*, the February 2025 guidance, was unrelated to the earlier regulations that Plaintiffs claim impacted Flywire's revenue. *See Leykin v. AT & T Corp.*, 423 F.Supp.2d 229, 245 (S.D.N.Y.2006) (revelation of bad news unrelated to fraud insufficient for loss causation).

# Katten

Hon. Frederic Block
February 6, 2026
Page 4

Respectfully submitted,

*Jonathan Rotenberg*

Jonathan Rotenberg

cc:      All parties by ECF